IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-1495

SHARON SADLE, Individually and for Others Similarly Situated,

    Plaintiff,

v.

COLUMBINE LOGGING, INC. d/b/a COLUMBINE CORPORATION,

    Defendant.

---

### ORIGINAL COLLECTIVE ACTION COMPLAINT

---

#### SUMMARY

1. Sharon Sadle ("Sadle") brings this collective action to recover unpaid overtime wages and other damages from Columbine Logging, Inc. d/b/a Columbine Corporation ("Columbine").

2. Sadle worked for Columbine as a Geosteering Geologist.

3. Like the Putative Class Members (as defined below), Sadle regularly worked more than 40 hours in a workweek.

4. But Columbine did not pay these non-exempt employees overtime wages at the proper premium rate when they work in excess of 40 hours in a workweek.

5. Instead, Columbine uniformly pays Sadle and the Putative Class Members different hourly rates (or "shift differentials") and/or bonuses when they perform certain

services, such as oil-based mud ("OBM") services, Irreducible Hydrocarbon Chromatography ("IHC"), and onsite geosteering.

6.But Columbine fails to include these shift differentials and bonuses in calculating Sadle's and the Putative Class Members' regular rates of pay for overtime purposes.

7.Columbine's shift differential and bonus pay scheme violates the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") by depriving Sadle and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on all renumeration received – for the hours they work in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

8.This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.This Court has general personal jurisdiction over Columbine because Columbine is a domestic corporation that maintains its headquarters and principal office in Littleton, Colorado.

10.Venue is proper because Columbine maintains its headquarters and principal office in Littleton, Colorado, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

11.Sadle worked for Columbine as a Geosteering Geologist from approximately February 2016 until July 2022.

12. Throughout her employment, Columbine classified Sadle as non-exempt and paid her on an hourly basis.

13. Throughout her employment, Columbine paid Sadle shift differentials and/or bonuses when she performed certain services, including but not limited to: oil-based mud ("OBM") services, Irreducible Hydrocarbon Chromatography ("IHC"), and onsite geosteering.

14. But throughout her employment, Columbine failed to include these shift differentials and bonuses in calculating Sadle's regular rate of pay for overtime purposes.

15. Sadle's written consent is attached as Exhibit 1.

16. Sadle brings this action on behalf of herself and other similarly situated hourly, non-exempt Columbine employees who were paid under Columbine's shift differential and bonus pay scheme.

17. Columbine uniformly pays these employees shift differentials and/or bonuses that Columbine fails to include in calculating their regular rates of pay for overtime purposes.

18. Thus, Columbine uniformly deprives these employees of overtime wages at the proper premium rate – based on all renumeration received – during workweeks in which these employees work more than 40 hours in violation of the FLSA.

19. The Putative Class of similarly situated employees is defined as:

> **All hourly, non-exempt Columbine employees who received shift differentials and/or bonuses at any time during the past 3 years ("Putative Class Members" or "Putative Class").**

20. Columbine is a Colorado corporation that maintains its headquarters in Littleton, Colorado.

21. Columbine may be served with process by serving its registered agent: **Paul G. Urtz, 4500 East Cherry Creek South Drive, Suite 1080, Denver, Colorado 80246**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

22. At all relevant times, Columbine was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Columbine was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Columbine has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25. At all relevant times, Columbine has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including cell phones/devices, laptops, computers, personal protective equipment, etc.) that have been moved in or produced for commerce.

26. In each of the past 3 years, Columbine has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

27. At all relevant times, Sadle and the Putative Class Members were Columbine's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all relevant times, Sadle and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. Columbine uniformly paid Sadle and the Putative Class Members shift differentials and/or bonuses depending on what types of services they performed.

30. But Columbine uniformly failed to include these shift differentials and bonuses in calculating Sadle's and the Putative Class Members' regular rates of pay for overtime purposes.

31. As a result, Columbine failed to pay Sadle and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on all renumeration received – in violation of the FLSA.

32. Columbine's uniform shift differential and bonus pay scheme, which deprives Sadle and the Putative Class Members of overtime compensation at the proper premium rate during workweeks in which they work more than 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

33. Columbine bills itself as "one of the premier geological well-site service companies in the country" with operations across the United States:[1]

---

[1] https://columbineco.com/why (last visited June 13, 2023).



34. Columbine employs workers, including Sadle and the Putative Class Members, to provide mud logging and well-site geological services to its oil and gas industry clients.

35. Columbine uniformly classifies these employees, including Sadle and the Putative Class Members, as non-exempt from overtime compensation and pays them on an hourly basis.

36. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, Sadle worked for Columbine as a Geosteering Geologist from approximately February 2016 until July 2022.

38. As a Geosteering Geologist, Sadle's primary responsibilities included collecting seismic data and samples during drilling; reviewing seismic models, maps, and

grids; completing daily reports on drilling and geological activities and providing the same to Columbine and its clients; and communicating any drilling changes to geologists.

39. Throughout her employment, Columbine classified Sadle as non-exempt and paid her on an hourly basis.

40. Throughout her employment, Columbine paid Sadle shift differentials and/or bonuses when she performed certain services, including but not limited to: oil-based mud ("OBM") services, Irreducible Hydrocarbon Chromatography ("IHC"), and onsite geosteering:



7

41. But throughout her employment, Columbine failed to include these shift differentials and bonuses in calculating Sadle's regular rate of pay for overtime purposes.

42. Sadle and the Putative Class Members perform their jobs under Columbine's supervision, and using materials, equipment, and technology approved and supplied by Columbine (and/or its clients).

43. Columbine requires Sadle and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

44. At the end of each pay period, Sadle and the Putative Class Members received wages from Columbine that were determined by common systems and methods that Columbine selected and controlled.

45. Columbine requires its hourly, non-exempt employees, including Sadle and the Putative Class Members, to record their hours worked using Columbine's timeclock system.

46. Further, Columbine uniformly subjects Sadle and the Putative Class Members to its uniform shift differential and bonus pay scheme.

47. Specifically, Columbine pays these employees shift differentials and/or bonuses depending on what services they perform.

48. Indeed, Columbine admits it pays Sadle and the Putative Class Members "other forms of compensation" in its employee handbook:

> **5.9 Other Compensations**
> 5.9.1 Employees may be eligible for other forms of compensation based on per job services. Services outside normal job tasks may include oil-based mud (OBM), Irreducible Hydrocarbon Chromatography (IHC), onsite geosteering, and others at the discretion of the Operations and Accounting departments.

49. But Columbine fails to include these shift differentials and bonuses in calculating Sadle's and the Putative Class Members' regular rates of pay for overtime purposes.

50. Columbine's shift differential and bonus pay scheme violates the FLSA by depriving Sadle and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on all renumeration received – for the overtime hours these employees work.

51. Sadle worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

52. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

53. Indeed, Sadle and the Putative Class Members typically work 12+ hours a day for 5 to 7 days a week.

54. Thus, Sadle and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

55. When Sadle and the Putative Class Members worked more than 40 hours in a workweek, Columbine did not pay them overtime wages at rates not less than 1.5 times their regular rates of pay – based on all renumeration received – for all overtime

hours worked because Columbine failed to include these employees' shift differentials and/or bonuses in calculating their regular rates of pay for overtime purposes.

56. Columbine's shift differential and bonus pay scheme, which deprives Sadle and the Putative Class Members of overtime compensation at the proper premium rate during workweeks in which they work more than 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

### COLLECTIVE ACTION ALLEGATIONS

57. Sadle realleges and incorporates all other paragraphs by reference.

58. Sadle brings her claims as a collective action on behalf of herself and the Putative Class Members pursuant to Section 216(b) of the FLSA.

59. The Putative Class Members were uniformly victimized by Columbine's shift differential and bonus pay scheme, which is in willful violation of the FLSA.

60. Other Putative Class Members worked with Sadle and indicated they were paid in the same manner, performed similar work, and were subject to Columbine's same illegal shift differential and bonus pay scheme.

61. Based on her experience with Columbine, Sadle is aware Columbine's illegal pay practices were imposed on the Putative Class Members.

62. The Putative Class Members are similarly situated in all relevant respects.

63. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

64. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

65. Rather, the Putative Class is held together by Columbine's uniform shift differential and bonus pay scheme that systematically deprived Sadle and the Putative Class Members of overtime wages at the proper premium rate (based on all renumeration received) when they worked more than 40 hours in a workweek.

66. The Putative Class Members are similarly denied overtime compensation at the proper premium rate when they work more than 40 hours in a workweek.

67. The back wages Columbine owes to Sadle and the Putative Class Members will be calculated using the same records and using the same formula.

68. Sadle's experiences are therefore typical of the experiences of the Putative Class Members.

69. Sadle has no interest contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

70. Like each Putative Class Member, Sadle has an interest in obtaining the unpaid wages owed under federal law.

71. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

72. Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Columbine will reap the unjust benefits of violating the FLSA.

73. Further, even if some of the Putative Class Members could afford individual litigation against Columbine, it would be unduly burdensome to the judicial system.

74. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

75. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

76. Among the common questions of law and fact are:

    a. Whether Columbine failed to include Sadle's and the Putative Class Members' shift differentials and/or bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA;

    b. Whether Columbine's shift differential and bonus pay scheme deprived Sadle and the Putative Class Members of overtime wages at the proper premium rate when they worked more than 40 hours in a workweek in violation of the FLSA;

    c. Whether Columbine's violations of the FLSA resulted from a continuing course of conduct;

    d. Whether Columbine's decision not to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate was made in good faith; and

    e. Whether Columbine's violations of the FLSA were willful.

77. Sadle and the Putative Class Members sustained damages arising out of Columbine's illegal and uniform employment policy.

78. Sadle knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

79. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Columbine's records, and there is no detraction from the common nucleus of liability facts.

80. Therefore, the issue of damages does not preclude collective treatment.

81. Columbine is liable under the FLSA for failing to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate for all hours worked in excess of 40 hours in a workweek.

82. Consistent with Columbine's illegal shift differential and bonus pay scheme, Sadle and the Putative Class Members were not paid overtime compensation at the proper premium rate (based on all renumeration received) when they work more than 40 hours in a week.

83. As part of its regular business practices, Columbine intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Sadle and the Putative Class Members.

84. Columbine's uniform illegal shift differential and bonus pay scheme deprived Sadle and the Putative Class Members of overtime wages at the proper premium rate for the hours they worked in excess of 40 hours in a workweek, which they are owed under federal law.

85. There are many similarly situated Putative Class Members who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit

from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

86. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

87. Those similarly situated employees are known to Columbine, are readily identifiable, and can be located through Columbine's records.

### COLUMBINE'S FLSA VIOLATIONS WERE WILLFUL OR DONE IN RECKLESS DISREGARD FOR THE FLSA

88. Sadle realleges and incorporates all other paragraphs by reference.

89. Columbine knew it was subject to the FLSA, including its overtime provisions.

90. Columbine knew Sadle and the Putative Class Members were its non-exempt employees entitled to overtime because Columbine uniformly classified them as such.

91. Columbine knew Sadle and the Putative Class Members were its hourly employees because Columbine uniformly pay them on an hourly basis.

92. Columbine knew it paid Sadle and the Putative Class Members other forms of compensation, including shift differentials and bonuses.

93. Columbine knew Sadle's and the Putative Class Members' shift differentials and bonuses were forms of renumeration these employees received.

94. Columbine knew the FLSA requires it to pay non-exempt employees, including Sadle and the Putative Class Members, overtime wages at rates not less than

14

1.5 times these employees' regular rates of pay – based on all renumeration received – for all hours worked in excess of 40 hours in a workweek.

95. Columbine knew the FLSA required it to include Sadle's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

96. Columbine knew it excluded Sadle's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

97. Columbine knew Sadle and the Putative Class Members worked more than 40 hours in a workweek because Columbine requires these employees to record their hours worked using its timeclock system.

98. Nonetheless, Columbine failed to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate – based on all renumeration received – for all overtime hours worked.

99. Columbine's failure to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

100. Columbine knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Sadle and the Putative Class Members of overtime compensation at the proper premium rate in violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

101. Sadle realleges and incorporates all other paragraphs by reference.

102. Sadle brings her FLSA claim as a collective action on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

103. Columbine violated, and is violating, the FLSA by failing to pay non-exempt employees, including Sadle and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on all renumeration received – for all hours worked in excess of 40 in a single workweek.

104. Throughout the relevant period, Columbine paid Sadle and the Putative Class Members shift differentials and/or bonuses that Columbine failed to include in calculating these non-exempt employees' regular rates of pay for overtime purposes.

105. Sadle and the Putative Class Members have been harmed as a direct and proximate result of Columbine's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Columbine derived a direct and substantial benefit.

106. Columbine knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate.

107. Columbine's failure to pay Sadle and the Putative Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision

not to pay these employees overtime compensation at the proper premium rate made in good faith.

108. Accordingly, Sadle and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

109. Sadle demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Sadle, individually and on behalf of the Putative Class Members, seeks the following relief:

  a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b. An Order pursuant to Section 16(b) of the FLSA finding Columbine liable for unpaid overtime wages due to Sadle and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid overtime compensation;

    c.    Judgment awarding Sadle and the Putative Class Members all unpaid compensation and other damages available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: June 13, 2023 | Respectfully submitted,<br><br>**JOSEPHSON DUNLAP LLP**<br><br>By: <u>*/s/ Michael A. Josephson*</u><br>   Michael A. Josephson<br>   Texas Bar No. 24014780<br>   Andrew W. Dunlap<br>   Texas Bar No. 24078444<br>   11 Greenway Plaza, Suite 3050<br>   Houston, Texas 77046<br>   713-352-1100 – Telephone<br>   713-352-3300 – Facsimile<br>   mjosephson@mybackwages.com<br>   adunlap@mybackwages.com<br><br>   Richard J. (Rex) Burch<br>   Texas Bar No. 24001807<br>   **BRUCKNER BURCH PLLC**<br>   11 Greenway Plaza, Suite 3025<br>   Houston, Texas 77046<br>   713-877-8788 – Telephone<br>   713-877-8065 – Facsimile<br>   rburch@brucknerburch.com<br><br>   **ATTORNEYS FOR PLAINTIFF &<br>   THE PUTATIVE CLASS MEMBERS** |